```
              IN THE UNITED STATES DISTRICT COURT
            FOR THE WESTERN DISTRICT OF TENNESSEE
                        WESTERN DIVISION
_____

QUANNAH HARRIS,
d/b/a LAST MINUTE CUTS,           )
                                  )
     Plaintiff,                   )
                                  )
v.                                )    No. 22-02478-MSN-tmp
                                  )
STATE OF TENNESSEE, OFFICE OF     )
THE SECRETARY OF STATE            )
ADMINISTRATIVE PROCEDURES         )
DIVISION and                      )
JUDGE MATTIELYN WILLIAMS,         )
                                  )
     Defendants.                  )
_____

                    REPORT AND RECOMMENDATION
_____
```

Before the court is a Motion to Dismiss filed by the Office of the Tennessee Secretary of State Administrative Procedures Division ("APD") and Administrative Law Judge Mattielyn Williams on August 29, 2022.[1] (ECF No. 10.) *Pro se* plaintiff Quannah Harris filed an Opposition to the Defendants' Motion to Dismiss on September 7, 2022. (ECF No. 11.) For the reasons below, it is recommended that defendants' motion to dismiss be granted.

### I.   PROPOSED FINDINGS OF FACT

---

[1] Pursuant to Administrative Order No. 2013-05, this case has been referred to the United States magistrate judge for management and for all pretrial matters for determination or report and recommendation, as appropriate.

Quannah Harris is a barber in Memphis, Tennessee. (ECF No. 7.) She is the master barber instructor and owner of Last Minute Cuts School of Barbering and Cosmetology ("Last Minute Cuts"). (Id.) Harris's claims in this case arise from an ongoing dispute regarding her school's licensure. This dispute has spanned across many years of state administrative proceedings and multiple federal lawsuits.

The events underlying Harris's allegations date back to 2017. That year, Harris was alleged to have violated the regulations governing barber and cosmetology schools. (ECF No. 7-1.) As a result, the Tennessee Board of Cosmetology and Barber Examiners ("Board") issued an Agreed Order and Statement of Understanding outlining a compliance plan that served as a "compromise and settlement" of the claims. (Id. at PageID 50.) Harris subsequently challenged the Board's actions in a federal lawsuit filed on September 14, 2018. Harris v. Biddle, No. 18-2631-MSN-tmp, 2019 WL 6222280, at *1 (W.D. Tenn. Oct. 18, 2019), report and recommendation adopted, 2019 WL 6219544. There, Harris alleged that inspectors had given her school unfavorable inspection reports as a result of an extortion scheme involving demands for money and sexual favors. Id. The court considered her substantive due process claims and ultimately granted summary judgment in favor of the defendants. Harris v. Biddle, No. 18-2631-MSN-tmp, 2020 WL

3980816, at *1 (W.D. Tenn. Feb. 26, 2020), report and recommendation adopted, 2020 WL 1558118.

Meanwhile, adjudication of the dispute continued administratively. Between May 2018 and November 2018, and again in March 2021, inspectors reported that Harris's school exhibited numerous violations of Tennessee's cosmetology and barber regulations. (ECF No. 10-3 at PageID 80-87.) As a result, a Notice of Hearing and Charges was filed on July 1, 2021. (Id. at PageID 77.) Harris then filed her second federal lawsuit. Harris v. Barnes, No. 21-2717-JTF-tmp, 2022 WL 2706174, at *1 (W.D. Tenn. Jan. 25, 2022), report and recommendation adopted, 2022 WL 2046106. There, she made several new allegations against both the Board and its inspectors. Id. However, the administrative adjudication of her claims remained ongoing at that point. In recognition of this, the district court ultimately abstained from hearing her claims under Younger v. Harris, 401 U.S. 37 (1971). Id. Harris's federal case was administratively closed pending the resolution of the ongoing proceedings. Id.

On December 6, 2021, the Board convened a disciplinary hearing to address the administrative complaints that had been opened against Harris's school. (ECF No. 10-3.) Administrative Law Judge ("ALJ") Mattielyn Williams, one of the defendants in the present case, presided over the hearing. (Id.) Harris was also present. (Id.) As a result of the hearing, the Board found that Harris had

violated several applicable statutes and regulations. (Id.) Consequently, it revoked Harris's cosmetology and barber school licenses. (Id.)

On February 7, 2022, Harris responded to the revocation by filing a petition for review in the Chancery Court of Shelby County. (ECF No. 10-4.) The petition named the State of Tennessee, the Tennessee Department of Commerce and Insurance, and the Board as defendants. (Id.) It also initially named the APD. (Id.) However, the Chancery Court dismissed the claim as to that defendant, finding that "the APD's only role in the case below was to provide an administrative judge" to preside over the Board's hearing. (ECF No. 10-6 at PageID 125.) Harris's claims against the other defendants remain pending in the Chancery Court. (ECF No. 10-5.)

The Chancery Court's dismissal prompted the filing of Harris's third federal lawsuit, which is the subject of the present motion to dismiss. In her amended complaint, Harris names the APD and ALJ Williams as defendants. (ECF No. 7.) Her action is brought under 42 U.S.C. § 1983. (Id.) Harris claims that ALJ Williams, acting on behalf of the APD, prevented Harris from having a fair hearing on her school's licensure because she "acted in corruption" and "failed to impartially oversee a hearing." (ECF No. 7 at PageID 35.) She alleges that ALJ Williams admitted and relied on inadmissible evidence, refused to admit exculpatory evidence, and

declined to hear Harris's motion. (ECF No. 7.) Additionally, Harris writes that ALJ Williams "asked personal favors and/or special accommodations from the Board's attorney, Michael Underhill" and that she "had secret meetings and or conversations regarding Harris' case." (Id. at PageID 35-36.) For all these reasons, Harris alleges that ALJ Williams "clearly failed to make a decision free from personal bias." (Id. at PageID 35.) Harris only seeks declaratory and injunctive relief. (Id. at PageID 45-47.)

The defendants filed their motion to dismiss for lack of subject matter jurisdiction on August 29, 2022. (ECF No. 10-1.) They argue that the claims against the APD should be dismissed on Eleventh Amendment grounds and that those against ALJ Williams should be dismissed based on absolute judicial immunity. (Id.) Alternatively, they ask the court to abstain from hearing Harris's claims under Younger v. Harris due to ongoing state judicial proceedings. (Id.)

Harris filed an opposition to the defendants' motion to dismiss on September 7, 2022. (ECF No. 11.) Harris argues that ALJ Williams is not entitled to absolute judicial immunity because she acted "in a manner violative of the Federal Constitution." (ECF No. 11-1 at PageID 145.) Regarding Younger abstention, she argues that the presence of two exceptional circumstances exempt her from the doctrine's application: bad faith and harassment, and the lack of an adequate state forum. (Id. at PageID 142.) Harris does not

- 5 -

respond to the defendants' arguments based on the Eleventh Amendment.

## II. PROPOSED CONCLUSIONS OF LAW

### A. Standard of Review

Defendants bring their motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1). Federal courts are courts of limited subject matter jurisdiction; they can adjudicate only those claims authorized by the Constitution or an act of Congress. Chase Bank USA, N.A. v. City of Cleveland, 695 F.3d 548, 553 (6th Cir. 2012). A challenge to this court's subject matter jurisdiction can come in two forms. A facial attack accepts the material allegations of the complaint as true but insists nonetheless that the court lacks subject matter jurisdiction to hear the case. Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co., 491 F.3d 320, 330 (6th Cir. 2007). A factual attack claims that the court lacks subject matter jurisdiction regardless of what the plaintiff has pleaded and requires the trial court to weigh the evidence before it in determining whether that is the case. Id. The present case involves a facial attack on subject matter jurisdiction.

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." Otworth v. Budnik, 594 F. App'x 859, 861 (6th Cir. 2014) (quoting Williams v. Curtin, 631 F.3d 380, 383 (6th Cir. 2011)). However, "the lenient treatment generally

accorded to *pro se* litigants has limits." Pilgrim v. Littlefield, 92 F.3d 413, 416 (6th Cir. 1996) (citing Jourdan v. Jabe, 951 F.2d 108, 110 (6th Cir. 1991)). Even *pro se* plaintiffs must present fair notice of claims against the defendants that are within the court's jurisdiction. Miller v. Countrywide Home Loans, 747 F. Supp. 2d 947, 953 (S.D. Ohio 2010).

**B.   Claims Against the APD**

Defendants first argue that the claims against the APD must be dismissed under the Eleventh Amendment. The Eleventh Amendment proscribes "a suit in which the State or one of its agencies or departments is named as the defendant" unless the State has waived its sovereign immunity. Pennhurst State Sch. & Hosp. v. Haldernman, 465 U.S. 89, 100 (1984); see also Haertel v. Mich. Dep't of Corrs., No. 20-1904, 2021 WL 4271908, at *3 (6th Cir. May 11, 2021). This prohibition includes "all suits, whether for injunctive, declaratory or monetary relief, against the state and its departments." Id. (quoting Thiokol Corp. v. Dep't of Treasury, 987 F.2d 376, 381 (6th Cir. 1993)) (internal quotations omitted). Tennessee has not waived its sovereign immunity. Tenn. Code Ann. § 20-13-102. The Eleventh Amendment therefore bars suit against any of its agencies, such as the APD.

Further, Harris's claims against the APD are brought under 42 U.S.C. § 1983, which is not applicable to states. Dulai v. Mich. Dep't of Cmty. Health, 71 F. App'x 479, 481 (6th Cir. 2003) (citing

Will v. Mich. Dep't of State Police, 491 U.S. 58, 63-64 (1989) ("neither a State nor its officials acting in their official capacities are 'persons' under § 1983)). Since Harris sued a state agency under § 1983, her claims are barred by the Eleventh Amendment and not cognizable under § 1983. It is therefore recommended that her claims against the APD be dismissed.

**C.  Claims Against ALJ Williams**

Defendants next argue that the claims against ALJ Williams must be dismissed due to absolute judicial immunity. Preliminarily, defendants are correct in asserting that judicial immunity is available for ALJ Williams as a state administrative law judge. Absolute judicial immunity has been applied to those "who perform functions closely associated with the judicial process" including "the federal hearing examiner and administrative law judge." Cleavinger v. Saxner, 474 U.S. 193, 200 (1985). In the Sixth Circuit, this protection has also been applied to state administrative law judges. Shelly v. Johnson, 849 F.2d 228, 230 (6th Cir. 1988).

Whether judicial immunity attaches depends on the relief sought. Judges have broad immunity from suits for money damages. Brookings v. Clunk, 389 F.3d 614, 617 (6th Cir. 2004) (citing Mann v. Conlin, 22 F.3d 100, 103 (6th Cir. 1994)). This immunity is only overcome when a judge acts outside their judicial capacity or in the complete absence of all jurisdiction. Mireles v. Waco, 502

U.S. 9, 11-12 (1991). However, Harris does not seek damages; instead, she seeks both declaratory and injunctive relief.

The language of § 1983 "implicitly recognizes that declaratory relief [in an action brought against a judicial officer] is available in some circumstances." Cooper v. Rapp, 702 F. App'x 328, 333 (6th Cir. 2017) (quoting Brandon E. ex rel. Listenbee v. Reynolds, 201 F.3d 194, 197 (3d Cir. 2000)); see also Ward v. City of Norwalk, 640 F. App'x 462, 467 (6th Cir. 2016). The availability of this relief "turns on whether the judge can properly be named as a defendant." Cooper, 702 F. App'x at 333 (citing Listenbee, 201 F.3d at 198) (internal quotations omitted). Suits against judges for declaratory relief, like any other suit, must satisfy the case-or-controversy requirement of Article III, which "operates to ensure that declaratory relief is available only when a live controversy continues to exist." Id. Where there is no case or controversy, the court has no subject matter jurisdiction. Lindke v. Tomlinson, 31 F.4th 487, 493 (6th Cir. 2022) (citing Michigan v. Meese, 853 F.2d 395, 397 (6th Cir. 1988)).

In the Sixth Circuit, courts have found that the presence of a live controversy is determined by the role a judge played in the proceedings being challenged. If a judge acted as the enforcer or administrator of a statute, they may be a proper defendant in an action for declaratory relief. Lindke, 31 F.4th at 493. However,

- 9 -

if a judge acted as a "disinterested judicial adjudicator," they are not amenable to suit for declaratory relief under § 1983. Cooper, 702 F. App'x at 333 (citing Listenbee, 201 F.3d at 201 (3d Cir. 2000); In re Justices of Supreme Court of Puerto Rico, 695 F.2d 17, 21 (1st Cir. 1982) (Breyer, J.)). This is because no case or controversy exists between a judge acting in an adjudicatory capacity and a litigant appearing before them. Lindke, 31 F.4th at 493.

Based on the face of the complaint, the undersigned finds that ALJ Williams acted as an adjudicator in the proceedings before the Board. Under the Tennessee Administrative Procedures Act, ALJs in contested cases are obligated to "preside at the hearing, rule on questions of the admissibility of evidence, swear witnesses, advise the agency members as to the law of the case, and ensure that the proceedings are carried out in accordance with this chapter, other applicable law and the rules of the respective agency." Tenn. Code Ann. § 4-5-301. "An administrative judge or hearing officer shall decide a procedural question of law." Id. However, ALJs are not permitted to "take part in the determination of a question of fact, unless the administrative judge or hearing officer is an agency member." Id. ALJ Williams's role in the proceedings was limited to making evidentiary and procedural determinations. This is consistent with Harris's amended complaint, which alleges that ALJ Williams declined to hear

- 10 -

Harris's motion, allowed the Board to bring particular charges, declined to admit certain documents while admitting others, and generally allowed the Board to make its case before her.[2] (ECF No. 7.) The undersigned finds that Harris has alleged facts consistent with ALJ Williams acting in an adjudicatory fashion. Thus, no case or controversy exists between Harris and ALJ Williams. Because there is no case or controversy, the undersigned finds that this court lacks subject matter jurisdiction to hear Harris's claims against ALJ Williams.

The undersigned also finds that ALJ Williams is immune to suit for injunctive relief. Such relief is not available under § 1983 "unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983; Cooper, 702 F. App'x at 334. Harris has not asserted that ALJ Williams violated a declaratory decree, or that declaratory relief is unavailable. See Cooper, 702 F. App'x at 334. Injunctive relief is therefore not available to Harris under § 1983. For these reasons, it is recommended that all claims against ALJ Williams be dismissed with prejudice.

**D.   Younger Abstention**

---

[2] The undersigned is aware that the amended complaint references as an exhibit a video of the entire hearing that is available on YouTube. However, Harris has not identified any aspect of the hearing that would call into question ALJ Williams's role as an adjudicator.

Even if the APD and ALJ Williams were not immune to Harris's suit, her claims nevertheless would be dismissed under the doctrine of Younger v. Harris. Younger abstention exists to preserve "equity and comity" between state and federal governments. Doe v. Univ. of Kentucky, 860 F.3d 365, 368 (6th Cir. 2017). Traditionally, the doctrine compelled federal courts to refrain from interfering with state criminal prosecutions, but it has since been extended to prevent interference with civil enforcement proceedings that are "akin to criminal prosecutions." Id. at 369 (quoting Sprint Commc'ns, Inc. v. Jacobs, 571 U.S. 69, 72 (2013)). Specifically, the Supreme Court has identified three types of proceedings where Younger abstention may apply: (1) ongoing state criminal prosecutions, (2) civil enforcement proceedings that are akin to criminal prosecutions, and (3) civil proceedings involving "certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions." Sprint, 571 U.S. at 78 (quoting New Orleans Pub. Serv., Inc. (NOPSI) v. Council of City of New Orleans, 491 U.S. 350, 368 (1989)).

Once the relevant proceeding "is found to fit into one of the three NOPSI categories listed above," courts apply a three-step analysis to determine if abstention is warranted. Doe, 860 F.3d at 369. First, "there must have been an ongoing state judicial proceeding when the complaint was filed." Youssef v. Schuette, No. 19-1225, 2019 WL 11753787, at *2 (6th Cir. Sept. 17, 2019) (citing

Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 432-34 (1982)). Second, that ongoing state proceeding "must involve an important state interest." Id. Finally, the proceeding must give plaintiffs an "adequate opportunity" to raise any constitutional claims they may have. Id. At this last step, it is presumed the opportunity to raise constitutional claims exists; the plaintiff bears the burden of showing that there is a clear state-law bar to doing so. Id. (citing Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 14 (1987)).

1. NOPSI Categories

The defendants argue that the state cosmetology disciplinary proceedings against Harris are the type of "civil enforcement proceedings akin to criminal prosecutions" to which Younger abstention applies. These types of proceedings typically feature "a state actor [who] is routinely a party to the state proceedings and often initiates the action" and are "initiated to sanction the federal plaintiff." Doe, 860 F.3d at 369 (quoting Sprint, 571 U.S. at 78 (internal quotation marks omitted)). Common indicators include "an investigation and formal complaint, the seriousness of consequences, the availability of a hearing, [and] the introduction of witnesses or evidence[.]" Alexander v. Morgan, 353 F. Supp. 3d 622, 627 (W.D. Ky. 2018) (citing Sprint, 571 U.S. at 81).

This court has previously determined that the Board's disciplinary process falls within this category. Barnes, 2022 WL 2706174, at *4. There, this court referred to the Sixth Circuit's previous rulings finding that similar state administrative proceedings qualified. See Youssef, 2019 WL 11753787, at *2 (state medical board licensure proceedings); Doe, 860 F.3d at 370 (state university disciplinary proceedings); Alexander v. Rosen, 804 F.3d 1203, 1207 (6th Cir. 2015) (state child custody and support hearings); Watts v. Burkhart, 854 F.2d 839, 846 (6th Cir. 1988) (state medical license suspension proceedings). In Barnes, this court noted that the proceedings here contain many of the features that Sprint contemplated these quasi-criminal proceedings would possess. 2022 WL 2706174, at *4. The disciplinary proceedings were initiated by an investigation and a formal complaint, are resolved through a hearing process where witnesses and evidence may be presented, and involve serious consequences including the loss of a business license. (ECF No. 10-3.) Based on Sixth Circuit precedent and the nature of the proceedings, as well as this court's own prior rulings, the undersigned finds that the state cosmetology disciplinary proceedings are quasi-criminal proceedings under NOPSI. Because of this finding, the undersigned must now determine whether Younger abstention applies.

2.   Younger Factors

Federal courts abstain under Younger where three factors are met. First, there must be ongoing state judicial proceedings. Sun Refining & Marketing Co. v. Brennan, 921 F.2d 635, 639 (6th Cir. 1990). For purposes of this factor, "the State's trial-and-appeals process is treated as a unitary system[.]" Morgan, 353 F. Supp. 3d at 628 (citing NOPSI, 491 U.S. at 369). As the Supreme Court has stated, "a necessary concomitant of Younger is that a party wishing to contest in federal court the judgment of a state judicial tribunal must exhaust his state appellate remedies before seeking relief in the District Court." Id. (quoting Huffman v. Pursue, Ltd., 420 U.S. 592, 608 (1975)). This factor is satisfied. Harris filed her initial complaint in this case on July 26, 2022. (ECF No. 1.) Her petition to the Shelby County Chancery Court was initiated months earlier on February 7, 2022. (ECF No. 10-5.) Although Harris's claims against the APD have been dismissed, her claims against other defendants remain active. (Id.) The requirement that proceedings be ongoing is therefore satisfied.

Second, Younger abstention applies if the ongoing state proceedings implicate an "important state interest." Youssef, 2019 WL 11753787, at *2 (citing Middlesex Cty., 457 U.S. at 432-34 (1982)). If the "state has a substantial legitimate interest in the kind of state proceeding at issue," then this factor is satisfied. Nimer v. Litchfield Tp. Bd. of Trustees, 707 F.3d 699, 701 (6th Cir. 2013). This court has previously held that the

- 15 -

proceedings in question satisfy this requirement. Barnes, 2022 WL 2706174, at *5. In support, this court cited multiple cases that have found that states have an important interest in regulating medical licenses, legal licenses, and other professional activities. See Squire v. Coughlan, 469 F.3d 551, 556 (6th Cir. 2006) ("the state has an extremely important interest in maintaining and assuring the professional conduct of the attorneys it licenses"); Al-Marayati v. Univ. of Toledo, 145 F.3d 1329 (table), 1998 WL 252760, at *6 (6th Cir. 1998) ("the State certainly has an important interest in monitoring and disciplining the conduct of faculty members at institutions of higher education which are financially subsidized by the state"); Watts, 854 F.2d at 846 (medical disciplinary proceedings); Kalniz v. Ohio State Dental Bd., 699 F. Supp. 2d 966, 972 (S.D. Ohio 2010) ("the regulation of the practice of dentistry is an important state interest"). The undersigned finds that state cosmetology board proceedings are not distinguishable from administrative proceedings involving other state-regulated, licensed professions. At least one other district court has agreed. Cornwell v. California Bd. of Barbering and Cosmetology, 962 F. Supp. 1260, 1268 (S.D. Cal. 1997) ("The state has an important interest in regulating the conduct of its professions [including cosmetology and barbering]."). The proceedings here directly bear on Tennessee's ability to regulate its cosmetology and barbering

- 16 -

licenses and implicate an important state interest. The second element of Younger is thus satisfied.

The final condition for Younger abstention requires that the state proceeding afford "an adequate opportunity for the federal plaintiffs to raise their constitutional claims." Nimer, 707 F.3d at 701. The plaintiff bears the burden of showing that "state procedural law barred presentation of their constitutional claims." Id. (citing Fed. Express Corp. v. Tenn. Pub. Serv. Comm'n, 925 F.2d 962, 969 (6th Cir. 1991)). Abstention will be appropriate unless "state law clearly bars the interposition of the constitutional claims." Squire, 469 F.3d at 556 (quoting Fieger v. Thomas, 74 F.3d 740, 745 (6th Cir. 1996)).

Although Harris alleges a "lack of an adequate state forum," she has not shown that state procedural law bars her constitutional claims. In fact, Harris has already appealed the revocation of her licensure to the Shelby County Chancery Court. (ECF No. 10-5.) These appeals are governed by Tennessee Code Annotated § 4-5-322, which provides that the Chancery Court "may reverse or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are in violation of constitutional or statutory provisions." Tenn. Code Ann. § 4-5-322(g)-(g)(1). Tennessee procedural law thus allows Harris's constitutional claims to be heard.

With these three elements satisfied, abstention is only inappropriate if "the plaintiff[s] can show that . . . bad faith, harassment, or flagrant unconstitutionality" underlies the case against them. Squire, 469 F.3d at 556 (quoting Fieger, 74 F.3d at 750). While Harris has alleged that the charges against her were brough in bad faith as part of a pattern of harassment, she has not provided sufficient facts to demonstrate that "the [Board's] actions against [her] were motivated by bad-faith or with intent to harass." Fieger, 74 F.3d at 750. As Harris herself acknowledges, this exception only applies "where state officials initiate repeated prosecutions to harass an individual or deter his conduct, and where the officials have no intention of following through on these prosecutions." Lloyd v. Doherty, No. 18-3552, 2018 WL 6584288, at *4 (6th Cir. Nov. 27, 2018) (quoting Ken-N.K., Inc. v. Vernon Twp., 18 F. App'x 319, 324-25 n.2 (6th Cir. 2001)). To the contrary, Harris has presented evidence of only one ongoing administrative case against her schools that has been fully prosecuted. (ECF No. 7.)

Without facts indicating that the administrative proceedings are the result of state harassment, rather than genuine enforcement efforts, the court cannot deny abstention under this "rarely applied" exception. Kalniz, 699 F. Supp. 2d at 973 (finding, as of 2010, "no Sixth Circuit cases which ha[ve] ever authorized federal intervention under the bad faith or harassment exception"); see

also Doe, 860 F.3d at 371 (noting that "conclusory statements" are not enough to show harassment); Video Store, Inc. v. Holcomb, 729 F. Supp. 579, 580 (S.D. Ohio 1990) (finding a "prima facie case of harassment" where plaintiffs were subjected to twelve civil enforcement actions and five criminal prosecutions by three different municipalities). As such, the undersigned finds that Younger abstention applies in this case.

In cases where Younger applies and the plaintiff does not seek damages, the proper course of action is dismissal without prejudice. Moncier v. Jones, 803 F. Supp. 2d 815, 834 (E.D. Tenn. 2011) (citing Louisville Country Club v. Ky. Comm'n on Human Rights, 221 F.3d 1335, 1335 (6th Cir. 2000)). Harris does not seek damages. The undersigned therefore finds that, in the event that the case is not dismissed with prejudice as recommended above, dismissal without prejudice under Younger is appropriate.

### III. RECOMMENDATION

For the above reasons, the undersigned recommends that the defendants' motion to dismiss be granted and that the plaintiff's complaint be dismissed with prejudice based on Eleventh Amendment and judicial immunity. In the alternative, the undersigned recommends that the motion to dismiss be granted under Younger abstention and the plaintiff's complaint be dismissed without prejudice.

Respectfully submitted,

- 19 -

```
                                   s/ Tu M. Pham
                                   TU M. PHAM
                                   Chief United States Magistrate Judge

                                   September 27, 2022
                                   Date
```

**NOTICE**

**WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THIS REPORT AND RECOMMENDED DISPOSITION, ANY PARTY MAY SERVE AND FILE SPECIFIC WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS. ANY PARTY MAY RESPOND TO ANOTHER PARTY'S OBJECTIONS WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)(2); L.R. 72.1(g)(2). FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND FURTHER APPEAL.**